Alberto Vincente AJANEL, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

Alberto Ajanel Vicente, Petitioner,

v.

John Ashcroft, Attorney General, Respondent.

Nos. 03–71101, 03–72957.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 2004.

Decided Feb. 1, 2005.

Murray D. Hilts, Esq., Law Offices of Murray Hilts, San Diego, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Michael Codner, Esq., Law Offices of Murray D. Hilts, Executive Office of Immigration Review, Office of Immigration Judge, San Diego, CA, Ronald E. Lefevre, Chief Legal Officer, San Francisco, CA, David V. Bernal, Ernesto H. Molina, Jr., Elizabeth J. Stevens, Esq., DOJ–U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: REINHARDT, HALL, and WARDLAW, Circuit Judges.

## MEMORANDUM *

Alberto Ajanel Vicente appeals the Board of Immigration Appeals' ("BIA") order affirming the immigration judge's ("IJ") denial of Ajanel's petition for asylum and withholding of removal. He also appeals the BIA's denial of his motion to remand for adjustment of status, and its denial of his motion to reopen to apply for relief under the Convention Against Torture. We deny the petition.

## JURISDICTION

We have jurisdiction to review the BIA's decision affirming the IJ, and its decision to deny Ajanel's motion to remand, pursuant to 8 U.S.C. § 1252. We have jurisdiction to review the BIA's denial of Ajanel's motion to reopen to apply for relief under the Convention Against Torture pursuant to § 2242(d) of the Foreign Affairs Reform

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

and Restructuring Act of 1998 and 8 C.F.R. § 208.18(e).

## STANDARDS OF REVIEW

The IJ's findings are reviewed for substantial evidence. *Andriasian v. INS,* 180 F.3d 1033, 1040 (9th Cir.1999). The BIA's denial of a motion to reopen or a motion to remand is reviewed for abuse of discretion. *Singh v. INS,* 213 F.3d 1050, 1052 (9th Cir.2000).

## DISCUSSION

### I. Asylum and Withholding of Removal

■ The IJ found that "the respondent has not presented credible evidence to sustain his burden of proof for either asylum or withholding of removal." Neither Ajanel's detention by the police nor the guerrillas' decade-old death threats compel a different conclusion because neither were "on account of" political opinion. Because none of Ajanel's mistreatment was on account of political opinion, he is not eligible for asylum or withholding of removal.

Ajanel's testimony regarding his sole encounter with the police, during which they beat him and detained him for twenty days, does not compel a finding that the police were motivated by Ajanel's actual or imputed political opinion. The police were primarily interested in whether Ajanel was a guerilla. They beat him to find out if he was a guerrilla, and let him go because they did not have evidence that he was a guerrilla. Police attacks on combatants do not constitute persecution. *See Matter of Fuentes,* 19 I. & N. Dec. 658, 661 (BIA 1988) (holding that the dangers faced by current police and military are "perils arising from the nature of their employment and domestic unrest rather than 'on account of' immutable characteristics or beliefs").

■ Substantial evidence also supports the IJ's conclusion that the guerrillas did not persecute Ajanel on account of actual or imputed political beliefs. Threats by insurgents upon current military personal are not normally attributable to actual political opinion, imputed political opinion, or membership in a social group. *See Chanco v. INS,* 82 F.3d 298, 302 (9th Cir.1996). All of the evidence indicated that Ajanel's family was threatened solely because his father was currently employed by the military. Thus, the record does not compel the conclusion that the guerrillas threatened Ajanel because of his actual or imputed political opinions. *See Aguilar–Escobar v. INS,* 136 F.3d 1240, 1241 (9th Cir. 1998) (affirming the BIA's conclusion that any persecution of a woman because of her husband's position as a police officer was not on account of a political opinion).

Ajanel's discussion of political neutrality is inapposite. There is no evidence in the record that Ajanel made an affirmative choice to remain neutral as required by *Lopez v. INS,* 775 F.2d 1015, 1016–17 (9th Cir.1985). Nor does the evidence suggest that the guerrillas threatened Ajanel because of his purported neutrality.

■ Even if the guerrillas acted on the basis of imputed political opinion, their decade-old death threats do not create a well-founded fear of persecution or prove that Ajanel is more likely than not to be persecuted if he returns to Guatemala. Ajanel's father's disappearance was the most recent and most powerful evidence suggesting that he would be subject to persecution in Guatemala. Ajanel's testimony suggests that his father's disappearance is central to his own fear: "And if my father was disappeared in 1989, something, of course, would happen to me as well." However, Ajanel failed to prove that his father's disappearance was related to the

guerrillas' threats. The military records suggest that Ajanel's father worked for the military after his disappearance. This undermines the potential conclusion that Ajanel's father was kidnaped by rebels, or that he went into hiding to escape such a fate.

■ The uncontroverted evidence that Ajanel's family received threatening letters in 1985 or 1986, and that they frequently hid from the guerrillas between 1982 and 1989, does not compel a finding that Ajanel has established a well-founded fear of persecution. The guerrillas threatened Ajanel's family because his father was in the military. His father is no longer in the military. Further, there is no evidence that Ajanel's mother and sister, who still live in their home village, have suffered any persecution.

## II. Motion to Remand for Adjustment of Status

■ The BIA did not abuse its discretion in denying Ajanel's motion to remand for adjustment of status because it balanced the relevant favorable and unfavorable factors. Adjustment of status is discretionary. 8 U.S.C. § 1255(a). The BIA may bypass any threshold concerns and move directly to the discretionary issue. *INS v. Abudu,* 485 U.S. 94, 105, 108 S.Ct. 904, 99 L.Ed.2d 90 (U.S.1988). The BIA held that Ajanel was not entitled to a favorable exercise of discretion because his 1997 drunk driving conviction outweighed his recent marriage to a United States citizen, and the fact that their child was a United States citizen.

The BIA sufficiently addressed the relevant factors. When making a discretionary determination, the BIA must "explain what factors it has considered or relied upon sufficiently that we are able to discern that it has heard, considered, and decided." *Kalubi v. Ashcroft,* 364 F.3d

1134, 1140–41 (9th Cir.2004) (citation omitted). The BIA's conclusion must be "explained with enough clarity that we can understand the rationale." *Id.* at 1141. The BIA has done so here. The BIA's order stated:

> [T]he board ... take[s] into account the social and humane considerations presented in an alien's favor and balanc[es] them against the adverse factors that evidence the alien's undesirability as a permanent resident.... We have considered the equities presented by the respondent, including his marriage to a United States citizen and his United States citizen child. *See Jen Hung Ng v. INS,* 804 F.2d 534, 538 (9th Cir.1986) (noting that marriage to a United States citizen is a favorable factor); *Matter of Cavazos,* 17 I & N Dec. 215 (BIA 1980) (stating that significant equity is presented by United States citizen wife and child). However, we believe that these equities do not overcome the respondent's criminal record [consisting of a conviction for drunk driving that caused bodily injury].

The BIA's rationale is clear: Ajanel's drunk driving conviction makes him such an undesirable candidate for permanent residency that it outweighs his familial contacts with the United States. We cannot ask more of the BIA's analysis because there is no rigorous rubric though which to compare factors that are as conceptually dissimilar as familial connections and criminal records.

*Kalubi* is not to the contrary. In *Kalubi,* we held that the BIA's consideration of spouse-related concerns in the asylum context was insufficient when the BIA's analysis consisted solely of the statement that it had "considered the provisions of 8 C.F.R. § 208.16(e), but [did] not find them determinative." *Id.* at 1141. Section 208.16(e) requires the BIA to consider, under cer-

tain circumstances, the "reasonable alternatives [to asylum] available to the applicant such as reunification with his or her spouse or minor children in a third country." 8 C.F.R. § 208.16(e). The *Kalubi* court held that the BIA's statement was too "conclusory" to assure that the BIA had "heard, considered, and decided." *Kalubi*, 364 F.3d at 1141.

The BIA decision in *Kalubi* was more boilerplate than the one at issue here. In *Kalubi*, the BIA did not enumerate the relevant factors other than through a reference to a regulation. More importantly, the BIA never addressed whether Kalubi could realistically "reuni[te] with his ... spouse ... in a third country." Thus, it was unclear whether this factor was a favorable or unfavorable to Kalubi's asylum request. Here, the BIA mentioned the factors present in Ajanel's case, stated whether each factor was favorable or unfavorable, and explicitly weighed those factors against one another. Therefore, the BIA did not abuse its discretion in denying Ajanel's motion to remand for adjustment of status.

### III. Motion to Reopen for Consideration of Relief under the Convention Against Torture

The BIA did not abuse its discretion in denying Ajanel's motion to reopen for consideration of Ajanel's Convention Against Torture claim. To establish a prima facie case under the Convention, Ajanel must show that he is more likely than not to be tortured. *Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir.2001). The record does not suggest that Ajanel will be tortured upon returning to Guatemala. *See Gui v. INS*, 280 F.3d 1217, 1222–23, 1230 (9th Cir.2002) (finding that decades of wiretapping, interrogations, and illegal searches, combined with two alleged assassination attempts, did not constitute torture); 8 C.F.R. § 208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment.").

**PETITION DENIED.**